## Marsh *versus* Consolidation Bank.

*Bail for stay of execution on judgment against accommodation drawer of note, discharged, by payment by or for endorsee.*

In an action against a surety for stay of execution on a judgment obtained by a bank against the maker of a note, evidence is admissible to show that in fact the maker was but an accommodation drawer for a firm, who were second endorsers, and for whose benefit the note was discounted : also that the bank after non-payment and protest obtained judgment against the firm, issued execution, levied upon their goods to an amount sufficient to satisfy the writ, when the debt was paid with the money of the firm, by a third person (to whom the judgment was assigned) ; for if true, the maker was thereby discharged and his surety was not liable on the recognisance of bail, at the suit of the bank for the use of the nominal payor of the debt.

ERROR to the District Court of *Philadelphia.* 𝒮ℎ𝓮𝓇 , 𝓇𝓮𝓉 ℛ _

This was a *scire facias* by The Consolidation Bank to the use of George H. Roberts, on the recognisance of William Marsh, who was bail for stay of execution for Isaac Murray.

The case was this:—On the 20th October 1860, the Consolidation Bank obtained judgment in the District Court, against Isaac Murray, upon a promissory note for $1050, drawn by him to the order of John Murray, and endorsed by the latter, and afterwards by B. C. Brooker & Co. Upon this judgment William Marsh, on the 22d of October 1860, entered into his recognisance for a stay of execution.

The defence of Marsh was, in substance, that :—

1. The note on which the judgment was recovered was an accommodation note, made by Isaac Murray, and endorsed by John Murray, without value, at the request of B. C. Brooker & Co. (the second endorsers), and was loaned to the latter firm for their sole accommodation.

2. Judgment had been taken against each endorser, as well as the drawer, on 20th October 1860 ; the Brookers not having given any surety to avoid execution, a *fi. fa.* was at once issued by the bank, lodged with the sheriff, and under it property of that firm, sufficient in value to satisfy the claim with costs, was pointed out to the officer and seized in execution. On the 23d of October, pending this seizure, Roberts (in company with B. C. Brooker, the senior member of the firm of B. C. Brooker & Co.) went to the attorney of the bank, paid him the amount of the execution, and the execution was thereupon "stayed."

The theory of the defence was, that this money was furnished by the Brookers in relief of their property seized in execution.

On the trial in the court below, the defendant offered several facts in evidence in support of his defence, all of which are stated in the assignments of error as presented in this court.

Under the ruling of the court below there was a verdict and

[Marsh v. Consolidation Bank.]

judgment in favour of the plaintiff; whereupon the plaintiff sued out this writ, averring here that the court below erred:—

1. In rejecting the testimony of Lawrence Connelly offered to prove admissions of Benjamin C. Brooker (one of the firm of B. C. Brooker & Co.), that the note for $1050, sued upon in the original action (wherein Marsh entered into the recognisance), was an accommodation note, loaned to his said firm by the drawer and the payee.

2. In rejecting the testimony of Greenwood Smith offered to prove statements and admissions of said Benjamin C. Brooker that the said note was paid.

3. In rejecting the testimony of George H. Roberts offered to show what Brooker had said to him in relation to the said note or the payment of it to the bank.

4. In rejecting the testimony of Michael Scott offered to prove that at the request of Isaac Murray he pointed out to the sheriff certain personal property of B. C. Brooker & Co., sufficient in value to pay this judgment, and that it was seized in execution under the *fi. fa.* issued by the Consolidation Bank on their judgment upon same note, to be followed by proof that after such levy the said execution was stayed on October 23d 1860.

5. In rejecting the record of the suit of the bank against B. C. Brooker & Co., upon the same note wherein the *fi. fa.* issued and lodged with the sheriff on the 20th October 1860, was stayed by the plaintiff's attorney on the 23d of said month.

6. In rejecting the testimony of A. H. Freeman, deputy sheriff, that he had under the *fi. fa.* seized property of B. C. Brooker & Co., sufficient in value to pay the debt, and that the execution was stayed.

*C. Guillou,* for plaintiff in error.

*Diehl* and *Gerhart,* for defendant.

The opinion of the court was delivered, January 30th 1865, by·

READ, J.—The defence in this case was, that Isaac Murray, the maker of the note, was simply an accommodation drawer for the benefit of B. C. Brooker & Co., the last endorsers, who probably had the note discounted at the Consolidation Bank and received the proceeds. If so, Brooker & Co. were the principals, and Isaac Murray only a surety. The Consolidation Bank obtained judgments against the maker, the second endorser, and last endorsers B. C. Brooker & Co., and the bank immediately issued a *fi. fa.* on the last-mentioned judgment, and levied on property of the firm sufficient to satisfy the claim with costs. Pending this seizure, George H. Roberts, with the senior member of the firm of B. C. Brooker & Co., went to the attorney of the

[Marsh *v.* Consolidation Bank.]

bank, paid the amount, and the execution was stayed. If this money was the money of the firm, then it is clear that Isaac Murray was discharged as to all the world.

William Marsh became the surety of Isaac Murray for stay of execution, and this *scire facias* was brought in the name of the Consolidation Bank for the use of George H. Roberts, who disclaimed all interest in the suit; and the case presents the singular spectacle of a legal and an equitable plaintiff, neither of whom have the slightest interest in the present controversy.

It is certain that if John Murray and B. C. Brooker had been on the stand, their testimony would have terminated the case; but as they were not examined, we are obliged to look at the testimony admitted, and the evidence offered but excluded, and we think that all the specifications of error have been sustained, and the rejected testimony should have been received. If it had been admitted, there would really have been only one question of fact for the jury: Whether B. C. Brooker & Co. had or had not provided the money which was paid to the Consolidation Bank. If they had, the case was at an end. This conclusion proceeds upon the basis that the evidence would have supported the offers, and no contradictory testimony had been produced by the plaintiff.

Judgment reversed, and *venire de novo* awarded.